IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

_____
SEARS, ROEBUCK & CO.     )
     )
   Third Party Plaintiff,     )
     )
     v.     )     Civil Action No. WGC-12-3328
     )
NAUTILUS, INC.     )
     )
   Third Party Defendant.     )
_____)

## MEMORANDUM OPINION

     Third-Party Plaintiff Sears, Roebuck & Co. ("Sears") brought this action against Third-Party Defendant Nautilus, Inc. ("Nautilus") alleging Nautilus breached its contractual obligations to defend, indemnify and provide insurance coverage for Sears.  David Newman and Cassandra Hall Newman ("the Newmans") sued Sears for injuries David Newman sustained while attempting to use exercise equipment on display in a Sears retail store.  The parties consented to proceed before a United States Magistrate Judge for all further proceedings in the case and the entry of a final judgment.  *See* ECF Nos. 8, 13, 16, 64.  Pending before the court and ready for resolution are Nautilus's Motion to Dismiss Sears' Third-Party Complaint or, in the alternative, Motion for Summary Judgment and Sears' Cross-Motion for Partial Summary Judgment.  ECF No. 58, 59.  No hearing is deemed necessary; therefore, Sears' request for hearing (ECF No. 59-1 at 31) is hereby **denied**.

## BACKGROUND

     Plaintiffs David Newman and Cassandra Hall Newman sued Sears for injuries Mr. Newman suffered arising from his use of a Bowflex PR 1000 exercise equipment on display at a Sears retail store in Columbia, Maryland.  Sears subsequently filed a third-party complaint

against Nautilus, the manufacturer and supplier of the Bowflex exercise equipment.  The third-party complaint alleges three alternative breaches of contract claims, specifically, (i) failure to defend and indemnify, (ii) failure to procure primary insurance and (iii) failure to insure.  Sears ultimately settled the claims brought by the Newmans.  *See* ECF No. 51 (Order of May 27, 2014 approving line of dismissal as to the Newmans' claims).  In the third-party action against Nautilus, Sears seeks payment of $250,000 toward Sears' defense and settlement of the Newmans' claims.

## JURISDICTION AND VENUE

Subject matter jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332.  The Newman Plaintiffs are residents of Maryland.  Defendant/Third Party-Plaintiff Sears is a New York corporation with its principal place of business in the State of Illinois.  *See* ECF No. 3 at 1 ¶ 2.  Third-Party Defendant Nautilus is a Washington corporation with its principal place of business in the State of Washington.  The amount in controversy exceeds $75,000, exclusive of interest and costs.  Pursuant to 28 U.S.C. § 1391 venue is proper in this district because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if  it fails to state a claim upon which relief can be granted."  *Velencia v. Drezhlo*, Civil No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012).  This rule's purpose "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)).  To that end, the court bears in mind the requirements of Rule 8, *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and

*Ashcraft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d.868 (2009), when considering a

motion to dismiss pursuant to Rule 12(b)(6).  Specifically, a complaint must contain "a short and

plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2),

and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause

of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678-79;

*see Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*).  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at

663.

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(a) when

there is no genuine issue as to any material fact, and the moving party is plainly entitled to

judgment in its favor as a matter of law.  In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249,

106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986), the Supreme Court explained that in considering a

motion for summary judgment, the "judge's function is not himself to weigh the evidence and

determine the truth of the matter but to determine whether there is a genuine issue for trial."  A

dispute about a material fact is genuine "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party."  *Id.* at 248.  Thus, "the judge must ask himself not

whether he thinks the evidence unmistakably favors one side or the other but whether a fair-

minded jury could return a verdict for the [nonmoving party] on the evidence presented."  *Id.* at

252.

The moving party bears the burden of showing that there is no genuine issue as to any

material fact.  No genuine issue of material fact is presented where the nonmoving party fails to

make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d. 265 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial. A verified complaint "is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge." *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991).

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962)); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson*, 477 U.S. at 252.

A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citation omitted). Indeed, the court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

When faced with cross-motions for summary judgment, the court must consider "each motion separately on its own merits to determine whether either of the parties deserve judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation

marks omitted).   The court applies the same standard of review.   *Monumental Paving &*
*Excavating, Inc. v. Penn. Mfrs.' Ass'n Ins. Co.*, 176 F.3d 794, 797 (4th Cir. 1999) (citing *ITCO*
*Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 45 n.3 (4th Cir. 1983) ("The court is not permitted to
resolve genuine issues of material fact on a motion for summary judgment – – even where . . .
both parties have filed cross motions for summary judgment.") (emphasis omitted), *cert. denied*,
469 U.S. 1215 (1985)).

## DISCUSSION

*Nautilus' Motion to Dismiss or, in the alternative, Motion for Summary Judgment & Sears'*
*Cross-Motion for Summary Judgment*

   *1.    Count I (Breach of Contract-Failure to Defend and to Indemnify)*

   Nautilus asserts it did not breach the defense and indemnity provisions of the September
12, 2008 Universal Terms and Conditions ("UTC"), the operative agreement between Nautilus
and Sears.   Section 11 of the UTC which addresses defense and indemnity is divided into two
sub-sections, 11.1 (Defense) and 11.2 (Indemnity and Contribution).

   Section 11.1, <u>Defense</u>, states in pertinent part:

> [Nautilus] shall, at its own cost and expense, defend [Sears], its
> affiliates and its subsidiaries and any of their present and former
> officers, directors, employees . . . directly or indirectly involved in
> the distribution or sale of Merchandise. . . from and against all
> allegations . . . asserted in any claim, action, lawsuit or proceeding
> between [Sears] and any third party . . . whether or not [Nautilus']
> Indemnity and Contribution Obligations (as defined below) shall
> apply, arising out of or relating to any of the following
> (collectively, the "Claims"): . . . (e) failure to warn or to provide
> adequate warnings and/or instructions in the use, assembly, service
> or installation of Merchandise . . . (g) the display, assembly or
> installation of Merchandise. . . Notwithstanding the provisions of
> the foregoing sentence, [Nautilus] shall have no obligation to
> defend [Sears] in any action, lawsuit, or other proceeding in which
> the basis for the claim is confined to the sole negligence of [Sears]
> in the display, assembly, service, repair or installation of
> Merchandise. . . .

Section 11.2, <u>Indemnity and Contribution</u>, states in pertinent part:

> [Nautilus] shall hold harmless and indemnify [Sears] from and against any and all damages, liabilities, losses, costs and expenses (including reasonable attorneys' fees, disbursements and costs of investigation) incurred by [Sears] in any claim, demand, action, lawsuit, or proceeding arising out of or in any way relating to any Claims; provided that [Nautilus] shall have no obligation to indemnify [Sears] for damages awarded based on the sole negligence of [Sears] in the display, assembly, service, repair or installation of any Merchandise.

Nautilus contends the UTC's defense and indemnity provisions are not triggered because the Newmans brought claims against Sears based on Sears' *sole negligence*. "Sears' indemnity and defense claim against Nautilus fails as a matter of law because it arises from Sears' sole negligence, which is expressly excluded from the scope of the indemnity." ECF No. 58 at 11. Alternatively Nautilus asserts it is entitled to judgment as a matter of law because Sears destroyed key evidence on the issue of the application of the UTC's sole negligence exception.

> Sears was on notice of a potential claim at the time of the injury. Sears was aware of some problem with the [exercise equipment], moving it off the floor and into storage after the incident involving Mr. Newman. The [exercise equipment] was in Sears' storage and control. This spoliation of the key evidence prejudices Nautilus' ability to defend itself and justifies the sanction of dismissal.

ECF No. 58 at 16-17 (citation omitted).

In its opposition and cross-motion for summary judgment Sears argues the plain language of the UTC triggers Nautilus' defense and indemnity obligations concerning any action arising from a failure to warn or to provide adequate warnings in the *use* of merchandise supplied by Nautilus. Sears notes the sole negligence exception clause of the UTC omits the word *use*. "Because Plaintiffs' claims plainly arose, at least in part, from a failure to warn relating to the <u>use</u> of the Bowflex, they trigger Nautilus's defense and indemnity obligations under the UTC."

ECF No. 59-1 at 20.  Sears further contends, despite the clause excluding Nautilus' obligation to defend Sears against claims based on Sears' sole negligence, because the UTC clearly states Nautilus will defend Sears against all allegations arising from a failure to warn claim and indemnify Sears for any and all damages related to such a claim, under Illinois law, Nautilus must defend and indemnify.  *See id.* at 22.

Alternatively, Sears claims the UTC is ambiguous.  Sears therefore is entitled to discovery to determine the parties' intent to include or exclude claims under the sole negligence exception.  Second, Nautilus is not entitled to judgment as a matter of law because in a previous action, Sears filed a motion for summary judgment against the Newmans on the ground that Mr. Newman was contributorily negligent in his use of the Bowflex.  Sears' alleged negligence therefore was not the *sole* cause of Mr. Newman's injury.  Third, Sears argues its failure to maintain the Bowflex does not warrant entry of judgment in Nautilus' favor.  Sears denied it acted in bad faith in failing to preserve the Bowflex.  Moreover, to the extent the court determines the sole negligence exception applies to the Newmans' claims, "Sears intends to argue that Plaintiffs' own negligence in misusing the Bowflex contributed to the accident. Because no inspection of the Bowflex would inform this argument, or any defense Nautilus would raise thereto, Nautilus' contentions that Sears' failure to maintain the Bowflex has somehow prejudiced its defense are unfounded."  ECF No. 59-1 at 25.

Attached as an exhibit to Sears' Amended Third-Party Complaint is the Newmans' Complaint (Negligence/Premises Liability/Personal Injury) against Sears.  *See* ECF No. 53-2. The Newmans alleged the following against Sears.

> On December 15, 2010, at approximately 4:30 p.m., Plaintiff David A. Newman was a business invitee, lawfully present at Defendant's said premises when he encountered a piece of exercise equipment consisting of a bench and weight

lifting/resist[a]nce apparatus which was being offered for sale by Defendant, and which Defendant had placed out for use and demonstration, along with other similar pieces of exercise equipment, for it[]s c[u]st[o]mers and/or potential buyers such as Plaintiff.

At said time, Plaintiff sat on the bench portion of the said equipment, with the intention of testing and/or using the said equipment, when the said bench dislodged and/or flipped sideways, causing Plaintiff to fall off of the said piece of equipment, and to strike his head on a nearby support pole, and to further fall to the ground where he struck other portions of his body and where he struck his head again.

Following Plaintiff's fall, it was discovered that, unbeknownst to Plaintiff, the bench portion of the equipment [had] not been properly assembled or secured for use by patrons such as Plaintiff.

At all times relevant herein, Defendant, by and through it[]s agents, servants and/or employees, owed Plaintiff a duty to maintain it[]s premises in a reasonable, safe and hazard free condition, to properly assemble any equipment set out for use by patrons, to properly inspect and/or supervise and/or monitor the use of any equipment set out for use or demonstration by patrons, to correct, remedy, and/or warn against any potentially difficult or hazardous conditions associated with equipment set out for use or demonstration by it[]s patrons, and to otherwise exercise reasonable and due care in the maintenance of said premises so as to prevent injury to patrons such as Plaintiff.

At all times relevant herein, Defendant, by and through it[]s agents, servants and employees, failed to properly assemble, inspect and maintain the said equipment; and further failed to properly supervise, caution and/or assist with the use and demonstration of the said equipment by its patrons, in violation of its aforementioned duties as indicated above.

The actions of Defendant, by and through its agents, servants and/or employees, as indicated above, constituted negligence, which negligence was the sole direct and proximate cause of Plaintiff David A. Newman's fall from the said equipment as indicated above.

ECF No. 53-2 at 2-3 (Compl. ¶¶ 5-10).

In its Amended Third Party Complaint Sears alleges Nautilus breached the UTC by failing to defend and to indemnify as follows:

> Plaintiffs' claims were subject to the Defense and Indemnity provisions of the Contract, which require Nautilus to defend and indemnify Sears in actions arising from, *inter alia*, the failure to warn and/or provide adequate instructions in the use of merchandise Nautilus supplies Sears.  Indeed, according to the allegations in their Complaint, and the expert testimony they presented in discovery, Plaintiffs' alleged damages were related to Sears' alleged failure to properly supervise, caution, and/or assist with the **use** and demonstration of The Bowflex in violation of its alleged duty to inspect, supervise, and/or monitor the **use** of any equipment set out for **use** or demonstration by patrons and its alleged duty to correct, remedy, and/or warn against any potentially difficult or hazardous conditions associated with The Bowflex that was set out for **use** by potential customers.

ECF No. 53 at 9 ¶ 31 (citations omitted).

Attached as an exhibit to Sears' Amended Third Party Complaint is the deposition transcript of Plaintiff David A. Newman.  *See* ECF No. 53-3.  In response to a series of questions, Mr. Newman described what happened the day he was injured at a Sears retail store.

> Q      Now, talk to me about the order of what happened while you were in Sears?
>
> A      I went there, like I said, to pick up some shoes and after thinking about it, possibility of some pajama pants also.  I purchased those.
>
> On the way out back towards my car to pick my son up I saw where they had a demonstration of exercise equipment.  Other people - - my attention was on the treadmill.  But they was [sic] already taken.  Customers already trying those out.  So I stopped and I saw a Bowflex was open.  So I went to that direction to maybe try that out.
>
> Then I was thinking after I tried that, I would then try the treadmill, if the customer were [sic] finished.
>
> Q      Okay.

A       Do you want me to go through the whole thing of falling and all of that stuff?  How far do you want me to go?

Q       Why don't we keep on going.  After you saw the Bowflex and you wanted to try it out, what happened next?

A       So I walked over.  I sat on the seat.  I sat down on it.  Then I say three to five seconds later, I attempted to straddle it with my left leg, throwing my left leg over and reaching back to pull down the bar.  Because I never used nothing that was not free weights.  It was more like rubbery things that have tension to it.  So I wanted to see how much resistance it was.

        As soon as I lift my leg up to straddle and grab the machine, all of a sudden I just went back and hit my head on the pole, jammed my shoulder on the floor and then hit my head on the concrete or carpet/concrete or whatever it was.  Then after that I was in a daze.

*                       *                       *

Q       Can you tell me how the machine appeared to you when you walked up to it?

A       It appeared as if it was a sturdy machine.  If - - that's it.  It appeared to be a sturdy machine.

Q       Did there appear to be anything unusual about it?

A       No.

*                       *                       *

Q       So you walked towards the machine, before sitting down did you do anything?

A       I sat down.  And proceeded to lean back, grab it.

Q       Okay.

A       And when I leaned back to grab it, the seat just appeared to just break and I fell straight down on my shoulder and hit my head on the concrete.

Q       Okay.

A       That's pretty much what I did.

Q       Okay.  What I'm getting at is:  Did you adjust any pins in the seat?

A       No.

Q       Did you adjust the seat in any way?

A       Not at all.

Q       Did you adjust anything on the machine in any way?

A       No.

\*                              \*                              \*

Q       You mentioned that the seat broke.  Why do you say that?

A       Because when I initially sat on it, it was very sturdy.  I didn't feel anything wobbling or anything.  And I sat down so when I attempted to go over, immediately, I believe I heard it, like, boom.  But I'm not for sure.  I know it happened so fast.

        I know that when I flipped it over, when I went over, it just went over and I said the seat broke because after the fact, talking to employees, the seat broke.

        So I know in my mind and was thinking right, that's what it - - it broke.

\*                              \*                              \*

Q       Okay.  When you say it's broke and that, again, is based on what?

A       It had, like, four employees there this time.  They had two other guys came up and they were all tinkling with the machine to figure out what in the world happened.

        One guy said, oh my God, they don't have the pin in.  I believe.  He's trying to figure it out.  When I say I believe, I know he said something about the pin.

        But another guy that was looking at the seat, he said, oh man, it's broke, the seat is broke.

Then another guy came up, they had to get another maintenance guy or someone to come over and trying to figure out what was going on.

He came up, I remember him saying, oh, the seat wasn't locked in.  But that's all I can really remember.

\*                                  \*                                  \*

Q      So back to that question, though, you said just before, four people were looking at the machine.   And the four people that you're referring to are the four people, the African-American gentleman, the gentleman named Casey and the two risk management people?

A      They was [sic] all standing around the machine.  Did I sit there and watch who looked at the seat?  I know they was [sic] conversating with each other.

Someone spoke up and said, oh my Lord, the pin is not in. And oh, the seat is broke.

And then later is when the guy came in and said it wasn't even put in the - - it wasn't in the, it wasn't locked in the seat. Somebody didn't have it locked it or something to that nature, you know.

\*                                  \*                                  \*

Q      [T]aking those four employees for a moment, not counting the maintenance man, did any of those four employees ever identify themselves as the person who assembled the machine?

A      Identified themselves?

Q      Did anybody say, for example, I built this machine?

A      No.

Q      Did any of those four people say anything, like, that they were an expert in Bowflex machines?

A      No.

ECF No. 53-3 at 8-9, 10, 11, 12, 15 (David Newman Dep. 29:1 - 30:15, 34:9-15, 37:1-18, 41:13 - 42:4, 44:16 - 45:12, 57:6-20, 60:15 - 61:4).

The Newmans' Complaint and Mr. Newman's deposition testimony clearly assert sole negligence by Sears. Although Mr. Newman utilizes the word "use" or "using" in the Complaint, Mr. Newman asserts failure on the part of Sears in *the display, assembly, service, repair or installation* of the Bowflex. For instance the Complaint contends Sears "had placed out for **use** and demonstration" the Bowflex. This contention concerns Sears' sole negligence in relation to displaying the Bowflex in its store. Similarly, the Complaint alleges Sears owed a duty to its customers like Mr. Newman "to properly assemble any equipment set out for **use** by patrons." The word "use" is employed in the context of Sears' purported failure in assembling the Bowflex.

Additionally, the Newmans claim Sears, which placed the Bowflex on display without any restrictions on access by customers, failed to supervise the use of the said equipment. The court finds the Newmans' claims, although citing "use", do not implicate provision 11.1(e), *i.e.*, failure to warn or to provide adequate warnings and/or instructions in the use, assembly, service or installation of the Bowflex. The Newmans' claims against Sears are confined to the sole negligence of Sears. Therefore, in accordance with Section 11.1 of the UTC, Nautilus had no obligation to defend Sears. Similarly, Nautilus had no obligation to indemnify Sears under Section 11.2. Furthermore, having read the UTC, the court does not find the sole negligence exception of the UTC ambiguous and thus Sears' requested discovery to determine the parties' intent is unwarranted.

Additionally, the court finds Nautilus is prejudiced by Sears' failure to preserve the Bowflex for future inspection as a claim or lawsuit by Mr. Newman against Sears could and should have been anticipated. Sears contends Nautilus is responsible for any issue arising from

the use, assembly or display of the Bowflex which caused Mr. Newman's injuries.  In its Reply

Nautilus explains why the destroyed Bowflex is prejudicial to its defense.

> Nautilus was entitled to an opportunity to inspect the [exercise equipment].  Had Sears not destroyed the Bowflex, Nautilus could have had an expert review Sears' assembly of the [exercise equipment] and determine whether the bench was properly constructed, whether pieces were missing, or whether the injury was in any way attributable to other factors so as to fall outside of the UTC's exception and the Lexington Policy exclusions. Nautilus could have looked for the "missing pin" or the misassembled seat that Mr. Newman and his expert described. Nautilus could have determined whether proper inspections or repairs would have prevented the injury.

ECF No. 62 at 9.

Nautilus and Sears have competing viewpoints regarding the validity or invalidity of the

indemnification provision of the UTC.   Under Illinois law, indemnification provisions *in*

*construction contracts* relieving a person from liability for his own negligence is void as against

public policy.   740 Ill. Comp. Stat. Ann. 35/1 (Lexis Nexis 2014)[1]; *Bosio v. Branigar*

*Organization, Inc.*, 154 Ill. App. 3d 611, 613, 506 N.E.2d 996, 998 (1987).   In the case before

this court the UTC with the indemnification provision concerns merchandise, not construction,

and thus the statute is not pertinent or controlling.   *See Native Am. Arts, Inc. v. Adobe Moon Arts,*

*Inc.*, No. 00 C 5267, 2001 U.S. Dist. LEXIS 501, at *8 (E.D. Ill. Jan, 18, 2001) (declining to

extend public policy prohibition of indemnification provisions in construction contracts "outside

of that limited realm, particularly when a long line of cases recognizes such indemnity

agreements outside of the construction context.").

---

[1] "With respect to contracts or agreements, either public or private, for the construction, alteration, repair or maintenance of a building, structure, highway[,] bridge, viaducts or other work dealing with construction, or for any moving, demolition or excavation connected therewith, every covenant, promise or agreement to indemnify or hold harmless another person from that person's own negligence is void as against public policy and wholly unenforceable."

Indemnity agreements are recognized as valid.  "Under Illinois law, parties may execute an indemnity agreement that encompasses the indemnitee's own negligence as long as the agreement's language is clear and unequivocal.  *Adobe Moon Arts,* 2001 U.S. Dist. LEXIS 501, at *7 (citations omitted).  In the *Adobe Moon Arts* case the indemnity provision required Adobe Moon to indemnify J.C. Penney "even if the claim is caused by the actual or alleged sole or partial negligence or other fault of Penney. . . ."  *Id.*  The court in the Eastern District of Illinois found such language sufficiently clear and unequivocal to survive a motion to dismiss.  This court find equally clear and unequivocal the indemnity provision of the UTC in this litigation:

> [Nautilus] shall hold harmless and indemnify [Sears] from and against any and all damages, liabilities, losses, costs and expenses (including reasonable attorneys' fees, disbursements and costs of investigation) incurred by [Sears] in any claim, demand, action, lawsuit, or proceeding arising out of or in any way relating to any Claims; *provided that [Nautilus] shall have no obligation to indemnify [Sears] for damages awarded based on the sole negligence of [Sears] in the display, assembly, service, repair or installation of any Merchandise.*

Emphasis added.

For the reasons outlined above, the sole negligence exception of the UTC applies based on the Newmans' Complaint.  Nautilus therefore is not obligated to defend and indemnify Sears.  Judgment shall be entered in Nautilus' favor and against Sears as to Count I.

2.   *Count II (Breach of Contract - Failure to Procure Primary Insurance)*

Sears alleges Nautilus breached the UTC by procuring an insurance policy with a $250,000 self-insured retention ("SIR") which violated the terms of the UTC.  Nautilus was required to procure an insurance policy which was primary and non-contributory.  "[C]ourts have recognized that the very existence of a self-insured retention necessarily makes the policy non-primary with respect to that retention.  Because Sears bargained for primary insurance in the

UTC, without qualification, Nautilus has breached the agreement by procuring insurance subject to a self-insured retention."  ECF No. 59-1 at 27.

In its cross-motion Sears asserts there are disputes of material fact which preclude judgment in favor of Nautilus.  Specifically, Sears contends the insurance policy is not "primary" in all respects because of the self-insured retention.  Alternatively, the court should permit discovery so the parties may determine the intent of the term "primary" in the UTC.  Sears claims such discovery is warranted by the parties' competing interpretations of the term "primary."

Nautilus argues, even if the $250,000 SIR violated the UTC, this alleged breach is not relevant.  "Because the claim at issue involves liability for Sears' sole negligence, by operation of Illinois law, the insurance provision is not implicated, and Sears could not have been damaged by any alleged deficiency in the policy that Nautilus purchased."  ECF No. 58 at 15.

The insurance provision, Section 12 of the UTC, states in pertinent part:

> [Nautilus] shall obtain and maintain, at its expense, a policy or policies of Commercial General Liability Insurance covering liabilities relating to Merchandise, including products and completed operations, with a broad form vendor's endorsement naming [Sears] as the additional insured, in those amounts . . . All such policies shall be primary and non-contributory and shall provide that the coverage thereunder shall not be terminated without at least thirty (30) days prior written notice to [Sears]. Proof of insurance evidencing such coverage shall be submitted in advance of or concurrent with the execution of the UTC by [Nautilus] and upon each policy renewal date.

The court concurs with Nautilus.  Even if factual disputes exist as Sears claims, those disputes are not material since Nautilus had no obligation to defend due to Sears' sole negligence.  Judgment shall be entered in Nautilus' favor and against Sears as to Count II.

3.      *Count III (Breach of Contract-Failure to Insure)*

Sears asserts the UTC requires Nautilus to obtain insurance for any claim related to merchandise Nautilus supplies Sears.  According to Sears such insurance coverage is mandatory even if the claim allegedly arises from Sears' sole negligence.  Because the UTC mandates insurance coverage and because Nautilus refused to comply with its contractual obligations to provide insurance, Nautilus' refusal constitutes a breach.  Sears has suffered damages in the amount of $250,000, equal to the amount of the SIR.

Nautilus claims, under Illinois law, a contract to insure another does not require insurance for sole negligence unless stated clearly and unequivocally.  ECF No. 58 at 13.  According to Nautilus no such requirement is mandated by the UTC.  "Because the claim at issue involves liability for Sears' sole negligence, by operation of Illinois law, the insurance provision is not implicated, and Sears could not have been damaged by any alleged deficiency in the policy that Nautilus purchased."  *Id.* at 15.

Illinois law recognizes a distinction between an indemnity agreement and an agreement to obtain insurance.  Under the former "the promisor agrees to assume all responsibility and liability for any injuries or damages," while under the latter "the promisor merely agrees to procure the insurance and pay the premiums."  *Bosio*, 154 Ill. App. 3d at 614, 506 N.E.2d at 999 (citing *Zettel v. Paschen Contractors, Inc.*, 100 Ill. App. 3d 614,617-18, 427 N.E.2d 189 (1981)).  The duty to defend is much broader than the duty to indemnify.  *Tanns v. Ben A. Borenstein & Co.*, 293 Ill. App. 3d 582, 586, 688 N.E.2d 667, 669 (1997).

Pursuant to the UTC Nautilus had to obtain and maintain, at its expense, a policy or policies of Commercial General Liability Insurance covering liabilities relating to Nautilus'

merchandise, including products and completed operations.  Nautilus must name Sears as an additional insured.  The policy must be primary and non-contributory.

Under Illinois law an insurer is obligated to defend if there are allegations in a complaint potentially within the coverage of the policy.  "[T]he insurer may not refuse to defend unless it is clear from the face of the complaint that it does not fall within the coverage of the policy." *Transcontinental Ins. Co. v. National Union Fire Ins. Co.*, 278 Ill. App. 3d 357, 368, 662 N.E.2d 500, 507 (1996).

Nautilus named Sears as an additional insured on its policy with Lexington Insurance Company.  The endorsement states in pertinent part:

> WHO IS AN INSURED (Section III) is amended to include as an insured any person or organization (referred to below as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business, subject to the following additional exclusions:
>
> 1.  This insurance afforded the vendor does not apply to;
>
>    a.      "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement.   This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;
>
>    *                          *                          *
>
>    e.   Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

ECF No. 53-6 at 61.  Based on the above the court finds Sears is the vendor and Nautilus is the party referred to as "your."

"In determining whether an insurer has a duty to defend its insured, the court must look to the allegations of the underlying complaint and compare these allegations to the relevant coverage provisions of the insurance policy." *Tanns*, 293 Ill. App. 3d at 586, 688 N.E.2d at 670 (citing *Bonnie Owen Realty, Inc. v. Cincinnati Insurance Co.*, 283 Ill. App. 3d 812, 816, 670 N.E.2d 1182, 219 Ill. Dec. 294 (1996)). The Newmans' Complaint alleges negligence by Sears in the assembly, display, maintenance, inspection and/or supervision of the Bowflex. The insurance policy issued by Lexington Insurance Company to Nautilus, whereby Nautilus named Sears as an additional insured, specifically offers coverage to Sears for bodily injury arising out of Nautilus' products sold or distributed to Sears in the regular course of Sears' business. There are however exceptions to this coverage. Excluded from coverage for bodily injury are those instances where Sears is obligated to pay damages by reason of the assumption of liability in a contract or agreement. Nowhere in the UTC does Sears assume liability.

Under Illinois law any doubt about the insurance policy's coverage are resolved in favor of the insured, or in this case, the additional insured. *Tanns*, 293 Ill. App. 3d at 586, 688 N.E.2d at 670. The Newmans' Complaint arguably potentially falls within the insurance policy's coverage since Mr. Newman was injured using a product of Nautilus distributed or sold in the regular course of Sears' business.

It is undisputed that Lexington Insurance Company provided Sears a defense in the Newman litigation. *See* ECF No. 59-2 at 2 ("The purpose of this letter is to advise you that we have completed our coverage investigation and have determined that your client, Sears Roebuck & Company is entitled to coverage as an Additional Insured under the Lexington policy for liability arising out of our Named Insured's product. Lexington will monitor developments subject to a **reservation of rights.**"). Lexington's coverage however is triggered for claims in

the amount above $250,000.  "The limits of liability are $2,000,000 each occurrence with a $4,000,000 aggregate limit.  This policy applies in excess of a $250,000 Per Claim Self-Insured Retention, which must be exhausted before Lexington has any defense or indemnity obligations to any insured." ECF No. 59-2 at 3.  It is the amount between $0 and $250,000 that Sears argues Nautilus is liable to cover.

Nautilus argues the UTC did not require Nautilus to obtain insurance for Sears' sole negligence.  The insurance mandate requires Nautilus to obtain a policy of Commercial General Liability Insurance covering liabilities relating to Nautilus' merchandise.

Alternatively Nautilus asserts Sears was aware of the $250,000 SIR in 2005 when Nautilus first contracted with Sears. Certificates of insurance were provided to Sears periodically thereafter.  Sears did not assert a breach of contract until the three year statute of limitations elapsed.  Nautilus argues, under Maryland law, a claim for failure to provide correct insurance accrues at the time the defendant failed to provide adequate insurance, not at a later date when the insurance fails to cover plaintiff's liability.  ECF No. 58 at 17-18.  Since Sears was on notice of the $250,000 SIR on multiple occasions between 2005 and 2009, "then Sears' cause of action accrued no later than July 2009, more than four years ago." *Id.* at 18.  Thus, Sears' insurance claim as to Count III is barred by Maryland's statute of limitations.

In its cross-motion Sears claims as irrelevant to Count III whether and when it had notice that the insurance policy contained a SIR.  "Instead, the relevant temporal inquiry for this Count is whether and when Sears had notice that Nautilus would not pay the self-insured retention in this particular case.  At the earliest, Sears had notice of this breach when Nautilus rejected Sears' tender of the underlying case to Nautilus." ECF No. 59-1 at 18.

In its reply Nautilus notes Sears has not demonstrated a dispute of material fact as to Nautilus' limitation defense as to Count III.  *See* ECF No. 62 at 6-8.  In addition Nautilus argues the insurance policy specifically excluded coverage due to Sears' failure to inspect, adjust, test or service the Bowflex in the usual course of business.  Nautilus relies upon the testimony of the Newmans' safety expert; Sears attached to its Amended Third-Party Complaint the transcript of this expert's deposition testimony.  *See* ECF No. 53-4.

The court finds Sears knew or should have known the insurance policy Nautilus obtained per the UTC included a $250,000 SIR.  Any objections Sears raises at this juncture are waived due to the three year statute of limitations under Maryland law.  Alternatively, the court finds Lexington's insurance policy excludes from coverage for bodily injury "[a]ny failure to make such inspections, adjustments, tests or servicing as [Sears]. . . normally undertakes to make in the usual course of business. . . ."  Judgment shall be entered in Nautilus' favor and against Sears as to Count III.

## CONCLUSION

For the foregoing reasons the Court finds there are no genuine issues as to any material fact and Nautilus is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  An Order will be entered separately.

October 31, 2014          _____/s/_____
        Date                              WILLIAM CONNELLY
                                   UNITED STATES MAGISTRATE JUDGE